IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JON DOUGLAS HALL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | No. 10-5658 |
| | ) | **Death Penalty Case** |
| vs. | ) | |
| | ) | |
| RICKY BELL, Warden, Riverbend | ) | |
| Maximum Security Institution, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

MOTION TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Indigent Petitioner-Appellant Jon Hall, see (D.E. 2 & 3 (Pro Se Motion To Proceed In Forma Pauperis and supporting affidavits)(Exhibit 1)), respectfully moves for permission to proceed on appeal in forma pauperis (IFP) pursuant to 28 U.S.C. §1915(a)(1) and Fed.R.App.P. 24(a)(5).

Hall's appellate claims include, *inter alia*, significant non-frivolous claims that his first-degree murder conviction and death sentence are unconstitutional because: (1) a jury instruction unconstitutionally precluded the jury from considering Hall's intoxication in determining his *mens rea*; (2) counsel ineffectively failed to investigate and present evidence that Hall suffers significant brain damage, which affected his *mens rea* and would have provided significant mitigating evidence; and (3) the prosecution presented false testimony and withheld material evidence concerning Hall's the true circumstances of the offense.

The District Court stated that Hall's appeal would not be taken in good faith "for the same reasons the Court denies a COA." (D.E. 110, at 133-34 (4/14/10 Order Denying Petition, Etc.) (Exhibit 2); D.E. 122, 11-12 (6/4/10 Order Denying Motion To Alter Or Amend Judgment) (Exhibit 3)). In revoking Hall's IFP status, however, the District Court misapplied 28 U.S.C. §1915, see Coppedge v. United States, 369 U.S. 438, 445, 454 (1962), and mistakenly and unfairly used §1915 as a gatekeeper in Hall's initial capital habeas corpus application. See Lonchar v. Thomas, 517 U.S. 314, 320, 323, 331 (1996) (denial of stay cannot be used as means to dispose of petition on merits).

Accordingly, this Court should grant IFP status on appeal.

\* \* \* \*

I.   INTRODUCTION

Jon Hall killed his wife, Billie Jo, following a domestic dispute. A Tennessee jury convicted Hall of the first-degree murder and sentenced him to death. A core issue was whether Hall acted deliberately (i.e., with "cool purpose") and premeditation, essential *mens rea* elements of first-degree murder under Tennessee law. While his trial was infected with numerous constitutional errors, at least three of those errors seriously distorted the fact-finding process, such that the jury unconstitutionally convicted Hall and sentenced him to death without ever fairly considering the true circumstances of the offense, Hall's actual *mens rea*, and all available mitigating evidence about his mental health. As will be

shown *infra*, Hall has presented at least three non-frivolous constitutional claims which demonstrate the unconstitutionality of his conviction and death sentence, and which entitle him to IFP status on appeal.[1]

II. THE DISTRICT COURT APPLIED THE WRONG STANDARD WHEN IT REVOKED MR. HALL'S IFP STATUS.

The District Court erred in concluding that Hall could not proceed IFP because an appeal would not be taken in good faith "for the same reasons the Court denies a COA." (D.E. 110, at 134(Exhibit 2); D.E. 122, 11-12 (Exhibit 3)). The "good faith" standard of §1915(a)(3) is lower than the standard governing issuance of a COA under §2253(c)(2) ("substantial showing" of denial of right). See Walker v. O'Brien, 216 F.3d626, 631-32 (7th Cir. 2000) (citing Barefoot v. Estelle, 436 U.S. 880, 893 (1983)). Under §1915, a party may proceed IFP if the appeal meets the objective "good faith" standard, which requires that the issue not be manifestly frivolous. Coppedge, 369 U.S. at 445. An issue is frivolous where it is "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible," Denton v. Hernandez, 504 U.S. 25, 33 (1992), or where there is no "rational argument in law or in fact." Nitzske v. Williams, 490 U.S. 319, 322-25 (1989).

---

[1] The factual and legal bases for each of Hall's claims for relief are set out in his Response To Respondent's Motion For Judgment On The Pleadings. (D.E. 100). Hall has this day also filed a motion to set a schedule for seeking a certificate of appealability (COA). When seeking filing with this Court his application for a certificate of appealability, Hall will identify all of the various claims upon which he seeks to appeal. For purposes of this motion, however, he will merely focus on three of the major constitutional claims he expects to present on appeal.

Contrary to the District Court's conclusion, Jon Hall presents substantial non-frivolous constitutional claims, and he is therefore entitled to proceed IFP.

III.     JON HALL'S CONVICTION AND SENTENCE ARE UNCONSTITUTIONAL.

   A.   THE JURY DID NOT CONSIDER EVIDENCE OF HALL'S INTOXICATION[2]

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citing Sandstrom v. Montana, 442 U.S. 510 (1979)). To convict Jon Hall of first-degree murder, the jury had to find beyond a reasonable doubt that Hall (1) unlawfully killed Billie Jo; (2) he did so "intentionally;" (3) the "killing was deliberate," defined as "one performed with cool purpose" and (4) "the killing was premeditated," defined as an act "done after an exercise of reflection and judgment." (Trial Tr. 356).

"Evidence of defendant's intoxication is relevant to negate a culpable mental state of a charged offense." Wiley v. State, 183 S.W.3d 317, 333 (Tenn. 2006). Despite evidence of Hall's intoxication, the trial court erroneously instructed the jury that "[i]ntoxication is *irrelevant* to the issue of the essential element of the Defendant's culpable mental state." (Trial Tr. 367)(emphasis added). As a result, despite the fact that Hall had presented significant evidence of intoxication, the jury was precluded from considering Hall's

---

[2] For a detailed recitation of the factual and legal bases for this claim, see D.E. 100, 3-25.

intoxication when determining his guilt of first-degree murder.

Consequently, this erroneous instruction relieved the state of its duty to establish Hall's *mens rea* beyond a reasonable doubt, see, e.g., Caldwell v. Bell, 288 F.3d 838 (6th Cir. 2002) (finding *Sandstrom* violation), and deprived Hall of his constitutional right to present a full defense. Crane v. Kentucky, 476 U.S. 683 (1986). Such error is not harmless. See Combs v. Coyle, 205 F.3d 269, 288 (6th Cir. 2000) (relief granted where counsel's failure undermined intoxication defense). Hall thus presents a non-frivolous claim and is entitled to proceed IFP on appeal.

> B.  THE JURY DID NOT CONSIDER HALL'S BRAIN DAMAGE BECAUSE COUNSEL INEFFECTIVELY FAILED TO INVESTIGATE AND PRESENT SUCH EVIDENCE TO THE JURY[3]

Defense counsel must perform in accordance with prevailing professional norms, Strickland v. Washington, 466 U.S. 668, 688-89 (1984), which in Tennessee requires counsel to "explore all avenues leading to facts relevant to the merits of the case and the penalty." Sims v. Livesay, 970 F.2d 1575, 1580 n.1 (6th Cir. 1992); Mauldin v. Wainwright, 723 F.3d 799 (11th Cir. 1984) (counsel ineffective for failing to investigate). Here, counsel was ineffective in failing to uncover that Hall did not satisfy the elements of first-degree murder.

Had counsel properly investigated, they would have concluded, as did Dr. J. Douglas Bremner, M.D. – a psychiatrist and nationally recognized expert in the

---

[3] For a detailed recitation of the factual and legal bases for this claim, see D.E. 100, 74-109.

neurobiology of childhood abuse and neglect[4] – that the *"extreme violence and neglect,"* to which Hall was exposed as a child resulted in significant malformations in his brain. (D.E. 102-40, at 3 (9/3/08 Douglas Bremner Report) (emphasis added)).

Indeed, structural (MRI) and functional (PET) neuroimaging studies of Jon Hall's brain reflect *significant* abnormalities in areas where (1) emotional information is received and processed, and (2) the regulation of appropriate response occurs. (D.E. 102-36, at 16 (1/17/08 Ruben C. Gurr – Analysis of Neurocognitive, MRI, and PET result for Mr. Jo[]n Hall)).[5] Had counsel investigate and presented such evidence, there is a reasonable probability that jurors would not have convicted Hall of first-degree murder, and a reasonable probability that at least one juror would have voted for a life sentence. See Strickland v. Washington, 466 U.S. 668 (1984).

Indeed, as Dr. Bremner has concluded, "[t]he evidence presented is not consistent with a planned, intentional and calculated pattern of behavior involving a premeditated plan to kill his wife." (Id., D.E. 102-40, at 9). He further concluded that Jon Hall's disability, coupled with "alcohol intoxication, show that [Hall] did not act in a deliberate,

---

[4] Dr. Bremner holds joint appointments at Emory University School of Medicine in Psychiatry and Behavioral Sciences and Radiology. (D.E. 102-39 and 102-39 (Bremner Declaration and Curriculum Vitae).

[5] Dr. Ruben Gur is an internationally recognized neuro-psychologist who is presently Professor of Psychology in Psychiatry, Department of Neurology and Radiology, University of Pennsylvania School of Medicine. (D.E. 102-35 (Gur Curriculum Vitae)).

cooly planned and intentional way, or after planning and reflection." (Id., D.E. 102-40, at 9).

Counsel were thus ineffective for failing to investigate and present evidence of the abuse and neglect Hall suffered and the profound neurobiological and behavioral impact of such. See Frazier v. Huffman, 343 F.3d 780 (6th Cir. 2003) (counsel failed to present evidence of functional brain impairment); see also Williams v. Taylor, 529 U.S. 362 (2000) (counsel ineffective for failing to investigate and present evidence of brain damage and trauma). Again, Hall presents a non-frivolous claim on appeal and is thus entitled to proceed IFP.

### C. THE PROSECUTION PRESENTED FALSE TESTIMONY AND WITHHELD FAVORABLE EVIDENCE

Jon Hall is also entitled to IFP status, because his appeal will also include constitutional claims that the truthfinding process at Hall's trial was also undermined by the prosecution, which (1) knowingly presented false testimony from jail house informant Chris Dutton, and Hall's daughters Jennifer and Cynthia Lambert; and (2) withheld material, exculpatory evidence showing that their testimony was false and/or their testimony unbelievable.

#### 1. The State Violated *Napue* When it Knowingly Presented False Testimony

##### a. The State Presented False Testimony From Informant Chris Dutton

Due process is violated where the prosecution knowingly presents false testimony

and there is a reasonable likelihood that such testimony could have affected the judgment. Napue v. Illinois, 360 U.S. 265 (1959); United States v. Bagley, 473 U.S. 667 (1985). Snitch Chris Dutton claimed at trial that Hall confided that he went to Billie Jo's house to make her suffer. Dutton, however, a professional informant who testified in a North Carolina murder case, see State v. Thompson, 420 S.E.2d 395 (N.C. 1992), and had been convicted of perjury, also testified that he did not know what an "informant" did. Dutton also testified at Hall's trial that he did not inform authorities about other inmates, and claimed, contrary to a mountain of withheld evidence, that he was a disinterested witness. In the District Court, Hall established that Dutton committed perjury about such matters.[6]

                b.       *The State Presented False Testimony From Hall's Daughters*

The State also presented the false testimony of Hall's young daughters. As Hall has shown in the District Court, immediately after Billie Jo's death, Hall's daughters (both under the age of eight) told authorities that the night Billie Jo died, Hall came to the house, was allowed entry, and drank beer for approximately an hour before a fight broke out. At trial, however, the girls falsely testified that Hall forced his way into the house and a fight broke out almost immediately. See Bagley, 473 U.S. 667, 680 (1984)(the State may not knowingly use false testimony to obtain a conviction").

---

[6] For instance, In a withheld letter from Dutton to the prosecutor in Mr. Hall's case, Dutton stated: "I could be of great use within the prison system as a reliable informant. And (I could) use this and N.C. [case in which he also testified] as a chance to become and informant for the F.B.I!" (Exhibit 4: 3/5/96 Letter from Dutton to "Sir").

      2.    *The State Violated <u>Brady</u> When it Withheld Favorable Evidence from the Defense.*

Due process requires the prosecution to disclose exculpatory evidence material to conviction or sentence, including impeachment evidence. See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Harris v. Lafler</u>, 553 F.3d 1208, 1033 (6th Cir. 2009), <u>citing</u> <u>Bagley</u>, 473 U.S. at 676 (relief granted where impeachment evidence withheld). A *Brady* claim is meritorious where (1) the state suppresses favorable evidence; and (2) there is a "reasonable probability" that had the evidence been disclosed, the outcome of the trial would have been different. <u>Harris v. Lafler</u>, 553 F.3d at 1032-33 (<u>citing</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 289-90 (1999)). A "reasonable probability" is a probability sufficient to undermine confidence in the trial. <u>See</u> <u>Kyles v. Whitley</u>. 514 U.S. 419, 434 (1995).

Here, the State withheld evidence that jailhouse informant Dutton had been convicted of providing false evidence to law enforcement, (D.E. 15, at 49 ¶228 (Amended Petition)); had a long history of mental illness (D.E. 54,¶231.1 (Amendment To Petition)); and received or expected favorable treatment for his testimony. (D.E. 54, at 1-6, ¶¶231.1 to 231.1.22). The State also withheld documents (including pre-trial statements from Hall's daughters) reflecting that Hall (1) did not force his way into the house, but was admitted; (2) was there for about an hour before the fight began, (D.E. 54, at 7, ¶231.2.1.2); and (3) consumed several beers before the fight. (D.E. 54, at 7, ¶¶231.2.1.3 to 231.2.1; 231.2.2.1 to 231.2.2.2).

All of this withheld evidence shows that Jon Hall did not kill Billie Jo deliberately, but in an intoxicated, emotionally-charged state. The withheld evidence would have placed the circumstances of the killing and the veracity of prosecution's main witnesses in a "different light as to undermine confidence in the verdict," in violation of *Brady*. Cone v. Bell, 129 S.Ct. 1769, 1783 (2009) (quoting Kyles, 514 U.S. 419, 435).

IV.   CONCLUSION

For these reasons, this Court should conclude that the district court erred in denying IFP status on appeal. Rather, on appeal, Jon Hall is pursuing constitutional claims in good faith and, as such, he may proceed on appeal in forma pauperis. This Court should therefore grant him IFP status on appeal. As noted *supra*, p. 3 n.1, Hall will flesh out his entitlement to a certificate of appealability on appeal in an upcoming application for certificate of appealability.

Respectfully submitted,

/s/ Michael J. Passino

Paul R. Bottei, Tenn.B.P.R. #017036
Michael J. Passino, Tenn.B.P.R. # 05725
Assistant Federal Public Defenders
Office of the Federal Public Defender
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, Tennessee 37203
(615) 736-5047

## CERTIFICATE OF SERVICE

    A copy of this motion will be served on counsel for respondent electronically by the CM/ECF system, this the 22nd day of June, 2010.

*/s/ Michael J. Passino*
